**Marvin BILITER, Appellant,**

v.

**UNITED MINE WORKERS OF AMERICA 1950 PENSION TRUST and 1950 Benefit Plan and Trust.**

No. 82–2120.

United States Court of Appeals, District of Columbia Circuit.

Argued April 25, 1983.

Decided July 26, 1983.

---

David J. Frantz, Washington, D.C., for appellant.

Israel Goldowitz, Washington, D.C., with whom William F. Hanrahan, Washington, D.C., was on the brief, for appellees.

Before WALD and GINSBURG, Circuit Judges, and VAN PELT,* Senior District Judge for Nebraska.

Opinion for the Court filed by Circuit Judge GINSBURG.

GINSBURG, Circuit Judge:

This case, concerning a bituminous coal miner's eligibility for a pension, centers on the "controlled company" exception to the United Mine Workers of America 1950 Pension Trust (Pension Plan). Marvin Biliter, a retired coal miner, sought district court review of the denial of his pension application by the Trustees of the Pension Plan. The same Trustees serve the UMWA 1950 [Health] Benefit Plan and Trust (Benefit

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

Plan). In response to the Trustees' motion for summary judgment, the district court affirmed the decision denying Biliter pension benefits. Biliter appeals from that judgment. We reverse and remand.

## I. BACKGROUND

### A. *Pension Eligibility Requirements*

A Pension Plan "participant" is eligible for lifetime benefits if he stopped performing "classified work" (*i.e.,* a job covered by the collective bargaining agreement) before 1976, has attained the age of fifty-five, and has completed twenty years of "credited service." Exhibits to Plaintiff's Motions # 10 at 6 (Pension Plan ¶ II.B.). Paragraph IV.A(1) of the Pension Plan states that an employee receives credit

> for a year of service for any calendar year in which he worked, subsequent to December 31, 1936, as an employee in a job classified in the then existing bituminous coal wage agreement for an employer in the coal industry for at least 1,000 hours of service, with credit given for the next lowest ¼ year in the event any employee works less than 1,000 hours of service as follows:
>
> | | |
> |---|---|
> | 750–999 hours, | ¾ year |
> | 500–749 hours, | ½ year |
> | 250–499 hours, | ¼ year |
> | 249 hours or less, | 0 |

For a miner in Biliter's situation, one who retired before 1976 and reached age fifty-five in 1979, the twenty years of credited service must include at least eight years of "signatory service," which refers to periods "during which a participant worked, after May 28, 1946, as an employee in a classified job for an Employer signatory to the bituminous coal wage agreement then in effect." Pension Plan ¶¶ II.B. & IV.B.(2). With two exceptions, however, no service credit is gained for any period in which a participant "was directly connected with the ownership, operation or management of a mine." Pension Plan ¶ IV.C. The first, or "gangwork," exception is not relevant to Biliter's claim. The second, known as the "controlled company" exception, provides:

> No credit for service shall be awarded a participant for any period in which he was directly connected with the ownership, operation or management of a mine; provided ... that in the case of a participant who received credit for service before July 1, 1974, under the terms of the pension plan program established under the UMWA Welfare and Retirement Fund of 1950, credit for signatory service shall be awarded for any period prior to July 1, 1975 during which such participant worked in a classified job pursuant to an agreement to produce coal for a signatory coal company which exercised control over the operation of the mine and was responsible for royalty payments on such coal produced to the 1950 Pension Trust or its predecessor.

*Id.* ¶ IV.C.(2). As we read this exception, a mine worker connected with the ownership, operation, or management of a mine may earn signatory service credit for employment prior to July 1, 1975, if four requirements are met:

(1) the "participant worked in a classified job";

(2) "pursuant to an agreement to produce coal for [another] signatory coal company";

(3) that "exercised control over the [mine's] operation"; and

(4) "was responsible for [making contributions] to the 1950 Pension Trust or its predecessor" based upon such coal production.

*Accord* Memorandum of Points and Authorities in Support of Defendants' and Counterclaimants' Motion for Summary Judgment at 4 (Trustees' statement of the four elements of the controlled company exception).

### B. *Facts*

Biliter worked in the bituminous coal industry at various times from 1941 or 1942 through 1970, when he became disabled as a result of silicosis. During most of these years, and in particular from 1961 to 1970, he was a member of the United Mine Workers of America, Local Union No. 6095.

From 1961 to 1970, he had an ownership interest in the Low Gap Coal Company, Inc., which operated a mine in Majestic, Kentucky. He worked at the Low Gap mine as a cutting machine operator, which is a classified job, and was paid a salary. Biliter signed the collective bargaining agreement on behalf of the mine. He had authority to hire and fire other employees. As the Trustees' counsel conceded at oral argument, however, "[t]here is no evidence [in the record] that [Biliter] ever actually did hire or fire." In 1976, Biliter applied to the Trustees for health benefits under the Benefit Plan. After reviewing his work history, the Trustees concluded that he was entitled to twenty-two years of credited service [1] and granted him the requested health benefits.

Biliter attained the age of fifty-five in 1979 and applied to the Trustees for pension benefits under the Pension Plan. This time, however, the Trustees refused to grant him credit for service in the years 1961–1970 on the ground that he was not working in a classified job during that period. With no award for those years, Biliter lacked the requisite twenty years of credited service. It does not appear from the record that the Trustees, when they denied Biliter a pension, specifically considered his eligibility under the controlled company exception. *See* Pension File at 47. After pursuing the available administrative review, Biliter sued the Trustees, and the Trustees counterclaimed for restitution of the health benefits Biliter received from 1977 through 1979.

The district court stated that the controlled company exception "arguably affords plaintiff the service credit he requests," Memorandum Opinion at 4, but did not further explore that ground for pension eligibility. Instead, after observing that Low Gap was a signatory to the National Bituminous Wage Agreement, the district court declared that "the only issue is whether plaintiff performed classified work for

Low Gap during the period 1961–1970." *Id.* Describing the issue as "close," *id.* at 5, the district court concluded that substantial evidence supported the Trustees' finding that Biliter did not perform classified work for Low Gap. The court therefore granted the Trustees' motion for summary judgment against Biliter on the pension claim. It denied as inequitable, however, the Trustees' counterclaim for restitution of the health benefits paid to Biliter. The Trustees have not appealed the ruling on their counterclaim.

## II. Decision

Oral argument concentrated on Biliter's eligibility for a pension under the controlled company exception. Counsel for the Trustees stated that only the first and third requirements, as we have numbered them, are in dispute; the second and fourth, counsel conceded, are satisfied. While we review the Trustees' decision under the "substantial evidence" standard, we are mindful of this Court's observation in *Maggard v. O'Connell,* 671 F.2d 568 (D.C.Cir.1982), that

> what is being reviewed here is not the findings of an agency but rather the decision of private trustees based on evidence collected by a hearing officer employed by a private trust. A reviewing court should keep in mind that those close to the trust indeed have a *duty* to preserve the corpus of that trust and, accordingly, are naturally disinclined to make awards from it .... [J]udicial review of their denial must be undertaken with ... [a] stern hand and flinty eye.

*Id.* at 571–72.

### A. *Classified Service*

To be entitled to signatory service credit for 1961–1970 under the controlled company exception, Biliter must have "worked in a classified job." Pension Plan ¶ IV.C.(2). The Trustees do not deny that Biliter was employed at Low Gap as a cutting machine

---

1. Biliter contends that the doctrine of issue preclusion prevents the Trustees from now contesting this determination. The Trustees respond that their mistake in paying Biliter $921

in health benefits does not bind them to pay him lifetime pension benefits from a different trust. In view of our disposition of this appeal, we pretermit the question.

operator, which is a classified job. Instead, they argue that he was connected with the management of Low Gap and, on that account, did not rank as a classified employee entitled to pension credit for the period of his association with that company. Brief for Appellees at 4. As we understand the Trustees' position on brief and at oral argument, they contend that only a member of the bargaining unit can be deemed to "work[ ] in a classified job" for purposes of the Pension Plan and that Biliter was an owner, not a bargaining unit employee. Consequently, the Trustees urge, he is not entitled to credit for his 1961–1970 employment even if he labored as a cutting machine operator during those years.[2] Furthermore, the Trustees assert, Biliter could not have been a classified employee because classified employees are paid by the hour. Biliter, on the other hand, received a salary in the round sum of $110 every two-week pay period, not hourly wages. Brief for Appellees at 12.

■ The Trustees' argument and the words of the controlled company exception are irreconcilable. Necessarily, the exception applies to *non*-bargaining unit employees (*i.e.*, persons "directly connected with the ownership, operation or management of a mine"); the exception has no function other than to enable covered owners, operators, or managers to earn signatory service credit for the time they "worked in a classified job." If, as the Trustees contend, only a *bargaining* unit employee can "work[ ] in a classified job," no owner, operator, or manager could meet the first requirement of the controlled company exception, and the provision would be drained of all meaning or effect. At oral argument, counsel for the Trustees said he realized the Trustees' position was "rather difficult given

the language of [the controlled company exception] provision"; "it seems self-contradictory," he ventured. Counsel suggested, however, that the exception "would apply, probably," to a person who is "merely a straw boss, as opposed to a person who is a manager in fact." He defined "the straw boss" as "one who is in appearance management, but who is in fact subject to the absolute control of another company." The exception indeed may apply to a "straw boss" or management employee subject to the "absolute" control of another coal company, but the words of the provision do not so confine its operation. The Pension Plan refers to persons "connected with the ownership, operation or management of a mine." It does not add the qualification, "but only in appearance." Nor do we find any requirement in paragraph IV.C.(2) of the Pension Plan that the control exercised by the controlling company be "absolute."

■ Further, we find scant merit in the Trustees' argument that the mere receipt of a salary, rather than wages, precludes an applicant from satisfying the "worked in a classified job" requirement. Biliter's salary was not significantly different in amount from pay received by other employees who were compensated by an hourly wage. He did receive his salary regularly,. but he claims service credit only for time he devoted to work in a classified job, not for time when the mine was closed or when he was not employed as a cutting machine operator.

■ We conclude, in sum, that Biliter securely met the first requirement of the controlled company exception. The record establishes beyond reasonable doubt that, when he served as a cutting machine operator, he "worked in a classified job."

---

**2.** The Trustees cite *Van Gunten v. Central States, Southeast and Southwest Areas Pension Fund,* 672 F.2d 586 (6th Cir.1982), for the proposition that only a member of the bargaining unit can be deemed a "classified employee" for purposes of pension credit. But counsel for the Trustees conceded at oral argument that the pension plan at issue in *Van Gunten* did not have a provision analogous to the controlled company exception, which contemplates that

an owner or manager can "work[ ] in a classified job." Moreover, in *Van Gunten,* the appellant was seeking pension credit for times during which no contributions to the pension fund had been made on his behalf. *Id.* at 587. Here, the Trustees' counsel acknowledged at argument that the record shows that the Daniel Crisp Corporation made the required pension contributions based upon the production at Low Gap.

### B. Control of Low Gap by Another Signatory Coal Company

For Biliter to meet the third requirement of the controlled company exception, the signatory coal company for which Low Gap produced coal pursuant to an agreement, and that paid royalties to the pension fund based upon Low Gap's production, also must have exercised control over Low Gap's operation during the time for which Biliter seeks credit. At oral argument, the Trustees' counsel stated that in addition to the threshold question whether Biliter worked in a classified job,

> [t]he other element in dispute is whether the Daniel Crisp Company ... exercise control. That is not an objective fact, such as whether they paid the contributions or whether they took the production. That is something that ... remains to be determined because essentially it was concluded that Mr. Biliter was not a classified employee no matter who controlled the mine. He was a manager, and he was a supervisor. Therefore, essentially below, the question of control was not really even reached.

Since the Trustees have not yet addressed this requirement, and it now appears that Biliter's claim turns on the answer to the "question of control," we return the case to the district court with instructions to remand the matter to the Trustees for their determination whether the Daniel Crisp Company "exercised control" over the Low Gap Company's mine operation.[3]

### CONCLUSION

Biliter must meet four requirements to qualify for pension eligibility under the controlled company exception. As we have numbered those requirements, it is conceded that Biliter meets the second and fourth. We hold that his work as a cutting machine operator satisfies the first requirement: Biliter is a "participant [who] worked in a classified job." The question whether the third requirement is satisfied, however, remains undecided and should be addressed, initially, by the Trustees. Accordingly, we reverse the judgment from which this appeal has been taken and remand the case to the district court, with instructions that the district court return the case to the Trustees for further proceedings consistent with this opinion.

*It is so ordered.*

---

**3.** We have pointed out in this opinion that the Pension Plan's controlled company exception, by its terms, is not confined to a "straw boss"; the exception covers persons in fact, and not merely in appearance, "connected with the ownership, operation or management of a mine." We further observed that paragraph IV.C.(2) of the Pension Plan does not say that the control exercised by the controlling company must be "absolute." The Trustees' determination whether Daniel Crisp or any other coal company "exercised control over [Low Gap's] operation" should be consistent with our opinion and should not resurrect the "straw boss" limitation.