**Mose SMITH, Plaintiff,**

v.

**UNITED MINE WORKERS OF AMERICA 1950 PENSION TRUST, et al., Defendants.**

**Civ. A. No. 82–3206.**

United States District Court, District of Columbia.

Dec. 22, 1983.

David J. Frantz, Washington, D.C., for plaintiff.

Jeffrey B. Cohen, UMWA Health & Retirement Fund, Washington, D.C., for defendant.

### MEMORANDUM

HAROLD H. GREENE, District Judge.

Plaintiff is a retired coal miner who contests as arbitrary and capricious the decision of the United Mine Workers of America 1950 Pension Trust and 1950 Benefit Plan and Trust (collectively referred to as the "Fund") to refuse his application for retirement benefits. Cross-motions for summary judgment are before the Court. For the reasons set forth below, plaintiff's motion for summary judgment is granted and defendants' motion is denied.

I

Plaintiff retired from the coal industry on August 28, 1962, after 18½ years of industry service, when he received a work-related injury to his hand which disabled him. Although the injury was not permanent, he did not return to the mines, claiming disability resulting from occupational disease. Plaintiff ultimately was found to be totally and permanently disabled as a result of occupational disease as of the date of his retirement and was awarded disability benefits under title II of the Social Security Act (42 U.S.C. § 416). He was also granted "black lung benefits" under title IV of the Federal Coal Mine Health and Safety Act of 1969 as amended (30 U.S.C. § 901 *et seq.*).

Since the inception of the Fund,[1] eligibility for benefits has been predicated upon a minimum of 20 years of service in classified jobs in the coal industry. See, e.g., *Lavella v. Boyle*, 444 F.2d 910 (D.C.Cir. 1971). Commencing with a trustees' resolution which became effective July 1, 1960, a "year of service" is defined to include not only periods of actual employment in classified jobs but also periods during which an applicant "received workmen's compensation payments pursuant to an award as a result of an occupational disease or injury sustained in the mine while employed in a classified job...." Resolution No. 56 I(B)(2).

The judicial settlement in a case known as *Maggard v. Huge* removed the requirement of a formal state award, and provided that a miner could receive pension benefits

> in the case of an occupational disease, if the applicant proves that he had contracted such occupational disease and that such disease was the direct and proximate cause of applicant's inability to work in the coal industry for a period of time of ascertainable duration. Each element of eligibility ... shall be proved by a preponderance of the evidence through competent medical evidence and other relevant evidence.

*Maggard v. Huge*, No. 76–2219 (D.D.C. March 14, 1979). In the case of occupational diseases, a possible four-year service credit begins to run from the date of last employment.

It is clear, and none of the parties disputes, that plaintiff has demonstrated 18½ years of industry service. The question before the Court is whether plaintiff is also entitled to credit for the remaining 1½ years of service. On that issue, defendants argue, first, that there is a presumption in favor of the trustees' decision, and second, that the decision of the trustees is supported by substantial evidence and should be upheld for that reason.

## II

There is some dispute between the parties regarding the applicable standard of review. Defendants seek to equate the decision of the trustees with that of an administrative agency, and they accordingly claim that the decision here ought to be upheld if it is supported by substantial evidence in the record as a whole. Memorandum at 18. Even assuming that the proposition is true in the abstract,[2] it does not apply here with the same force as in the usual situation involving a fiduciary, if at all. In *Maggard v. O'Connell*, 671 F.2d 568 (D.C.Cir.1982), the Court of Appeals for this Circuit considered an action by the widow of a miner against the trustees of the same Fund which is the defendant here. After commenting upon the need, in general, to allow less deference to an expert tribunal where the body may have exhibited bias, inconsistent judgments, or the like, the court went on to state (671 F.2d at 571):

> In the case before us today, we think it would be quite dangerous 'to slip into a judicial inertia' given the 'combination of danger signals' rebutting 'the presumption of agency regularity.' There have been a number of cases already holding the Funds' regulations and findings to be arbitrary and capricious. It should also be noted that what is being reviewed here is not the findings of an agency but rather the decision of private trustees based on evidence collected by a hearing officer employed by a private trust. A reviewing court should keep in mind that those close to the trust indeed have a *duty* to preserve the corpus of that trust and, accordingly, are naturally disinclined to make awards from it. It is also to be surmised that these individuals have no tenure, less job security, and are generally less well-insulated from outside pressures than those government employees whose decisions are more commonly reviewed under the 'arbitrary and capricious' or 'substantial evidence'

---

1. The present Fund is the legal successor to the UMWA Welfare and Retirement Fund of 1950, which was established under the National Bituminous Coal Wage Agreement of 1950 under 29 U.S.C. § 186(c).

2. It may be noted that in the case principally relied on by defendants—*Danti v. Lewis*, 312 F.2d 345 (D.C.Cir.1962)—the court reversed the decision of the trustees.

standards. (footnote omitted) (emphasis in original).

The Court will consider this admonition of the Court of Appeals in reviewing the decision of the trustees in this case.[3]

## II

Six physicians' reports dated within two years of plaintiff's retirement confirm that plaintiff had a debilitating lung disease. Two of the reports specifically state that plaintiff was totally and permanently disabled at the time of examination,[4] and two reports also explicitly link plaintiff's illness to work in the mines and exposure to coal dust.[5] There is, to be sure, lack of unity among the reports as to the precise diagnosis of plaintiff's pulmonary disorder. However, one report does diagnose black lung disease in the form of silicosis,[6] another observed pneumoconiosis[7] but concluded that it contributed little to plaintiff's pulmonary dysfunction,[8] and a third, while

stating that no evidence of silicosis was found, also expressed the opinion that the plaintiff's disability could have resulted in part from "the heavy exposure to the dusty atmosphere" of the coal mines.[9] There is little or no dispute among any of the medical reports as to the general nature and extent of plaintiff's disability, nor is there any finding or suggestion that it was not related to his coal industry employment. Additionally, several physicians who subsequently examined plaintiff also found chronic lung disease or pneumoconiosis.[10]

■ Defendants' efforts to overcome this evidence are meager at best. One of their principal contentions is that some of the medical experts did not specifically find pneumoconiosis and that some others who did make such a finding did not find the disease to be disabling. These findings can hardly be characterized, as do the defendants, as medical evidence that was "conflicting" with plaintiff's proof.[11] More-

---

**3.** *Maggard* does not seem to have significantly affected the trustees' decision-making. See *Biliter v. UMW 1950 Pension Trust,* 712 F.2d 1480 (D.C.Cir.1983); *Blankenship v. UMW 1950 Pension Trust,* No. 82–2179 (D.D.C. June 16, 1983); *Short v. UMW 1950 Pension Trust,* No. 82–2180 (D.D.C. January 28, 1983).

**4.** Reports of E.S. Hamilton, M.D. and of Robert F. Baxter, M.D.

**5.** Report of Robert F. Baxter, M.D. and report of Allen L. Cornish, M.D.

**6.** Report of E.S. Hamilton, M.D.

**7.** Pneumoconiosis is defined in the Federal Coal Mine Health and Safety Act of 1969, as amended as follows: "The term 'pneumoconiosis' means a chronic dust disease of the lung and sequelae including respiratory and pulmonary impairments arising out of coal mine employment." 30 U.S.C. Sec. 902(b)

The nature of this disease was discussed by the Supreme Court in *Usery v. Turner Elkhorn Mining Company,* 428 U.S. 1, 6, 7, 96 S.Ct. 2882, 2888, 49 L.Ed.2d 752 (1976):

Coal workers' pneumoconiosis—black lung disease—affects a high percentage of American coal miners with severe, and frequently crippling, chronic respiratory impairment. The disease is caused by long term inhalation of coal dust.... Complicated pneumoconiosis, generally far more serious, involves progressive massive fibrosis as a complex reaction to dust and other factors (which may include tuberculosis or other infection), and

usually produces significant pulmonary impairment and marked respiratory disability. This disability limits the victim's physical capabilities, may induce death by cardiac failures, and may contribute to other causes of death.

**8.** Report of Francis H. Hodges, M.D.

**9.** Report of Allen L. Cornish, M.D.

**10.** Reports of Charles W. Nelson, M.D. and Paul L. Odom, M.D.

**11.** Defendants' Memorandum at 20. Defendants' summary of the medical evidence in the "Argument" portion of their Memorandum, reads in its entirety as follows:

At best, the medical evidence is conflicting as to whether Smith was disabled by occupational disease. Dr. Cornish stated that Smith was disabled by pulmonary emphysema, and "could find no evidence of silicosis," although he felt Smith's heavy exposure to a dusty atmosphere could have contributed to his disability (R. 101). Dr. Hodges, who examined Smith on July 15, 1963, also diagnosed pulmonary emphysema. Although he noted the presence of pneumoconiosis, he did not find it to be disabling, and indeed, thought it was "contributing very little" to Smith's condition. (R. 97–98). Dr. Hamilton, based on his August 24, 1963 examination, considered Smith to be disabled as a result of, among other things, silicosis (R. 90). Dr. Baxter, on the basis of his January 22, 1964 examination,

over, it is not surprising that some of the medical experts did not pinpoint pneumoconiosis as directly as defendants would wish. The underlying diagnoses were made at a time when there was much confusion concerning this illness, when it had not even been recognized as a distinct disease by the Public Health Service,[12] and when it was often misdiagnosed for other lung diseases.[13] Only one expert submitted a report supporting the conclusion that plaintiff did not have pneumoconiosis, and he was of the opinion that plaintiff's disability could nonetheless have been caused by the heavy exposure to the dirty atmosphere of the mines.[14] Thus, the decision of the trustees must be regarded as clearly erroneous on the medical evidence alone.

There is more. As indicated, plaintiff was awarded black lung benefits under the Federal Coal Mine Health and Safety Act of 1969—benefits that are available only to "coal miners who are totally disabled due to pneumoconiosis...." 30 U.S.C. § 901.[15] Not only would such a determination by a federal agency operating in this field normally be entitled to substantial weight, but the eligibility regulations of the Fund itself provide that a black lung award under the Coal Mine Health and Safety Act is the equivalent of a workmen's compensation award, and that it entitles the recipient to an allowance of four years of additional service credit.[16] It is of no import that under these regulations an applicant must have been engaged in industry employment after December 30, 1969, the effective date of the Act, for it obviously makes no difference substantively whether an individual contracted black lung disease before or after that date if he was suffering from the disease at the time of his retirement.

Equally unimpressive is defendants' argument that, although plaintiff may well have been suffering from pneumoconiosis later on, they are not satisfied that he had that disease during the critical eighteen months in 1962. The voluminous medical evidence, supported by the findings of two federal administrative agencies, belie any such strained view of the situation.[17]

It is unfortunate that the Fund has failed to heed the admonition of the Court of Appeals in *Maggard*. There seems to be little else to do than to advise the trustees, again and again, in judgment upon judgment,[18] that they must administer the Fund entrusted to them with a modicum of common sense.

thought Smith was disabled based on diminution of visual activity, pulmonary fibrosis and emphysema, and heart disease secondary to chronic lung disease (R. 84–85). Dr. Ebert diagnosed pulmonary emphysema on May 14, 1964 (R. 77).

12. H.R.Rep. No. 563 91st Cong., 1st Sess., U.S. Code Cong. & Admin.News 1979, p. 823 (1969).

13. See the Fund Questions and Answer Pension Manual at 213:

It should be noted that the Fund's medical authorities have stated that the reluctance to use the diagnosis of coal worker's pneumoconiosis (Black Lung) in the early years (up until the late 1960's) resulted in many individual's disease process being identified variously as miner's asthma, tuberculosis, obstructive lung disease, and other similar disease entities. Oftentime, in fact, the disease process was pneumoconiosis.

The Funds have taken *official notice* of this past practice. Therefore, the practice should routinely be taken into consideration in all examiners' and hearing officers' evaluation of evidence on the issue of whether or not a coal miner was disabled by pneumoconiosis at any given time.

14. Report of Allen L. Cornish, M.D. who stated that he could find no evidence of silicosis, a form of pneumoconiosis. See Stedman's Medical Dictionary at 1291 (5th ed. 1982).

It is, in any event, not essential that plaintiff even be found to have suffered from pneumoconiosis. Under the policy statement in *Maggard*, retirement credits are awarded upon proof of any "occupational disease," that is, a disease "arising out of and in the course of classified coal industry employment."

15. Plaintiff was also found disabled under the Social Security Act, and such a finding, too, is entitled to consideration under the 1950 Pension Plan.

16. Resolution No. 83 II(A)(1)(b).

17. Defendants' other contention, that plaintiff did not retire because of black lung disease but because of employment conditions at the mines, is likewise refuted circumstantially by the medical evidence.

18. See note 3 *supra*.