Emma ALBRIGHT, Francis Bolyard, Richard Bolyard, Charles Broadwater, Kenneth Cummings, Thomas Dalton, Fairest Funk, William Gamble, Hershel Hovatter, James Martin, William Martin, Donald Maxwell, Charles Mersing, Everett Miller, Ralph Miller, Willie Moury, Carrie Phillips, Calvin Plum, J. Neil Sheets, Eugene Smith, Carney Stuchell, Steve B. Tees, Howard K. Uphold, Robert W. Watkins, Paul E. Weaver, Charles Weber, Charles Wodzneski, Lillian M. Wolfe, Castro Casseday, Howard Moury, Harold V. McDaniel, George Sypolt, Franklin Harris, John Galusky, and Bruce F. Thomas, Plaintiffs,

v.

UNITED MINE WORKERS OF AMERICA HEALTH AND RETIREMENT FUND, Defendant.

Civ. A. No. 83–0310–E(K).

United States District Court,
N.D. West Virginia,
Elkins Division.

Feb. 27, 1987.

Timothy J. Manchin and Michael John Aloi, Fairmont, W.Va., for plaintiffs.

Mike Magro, Jr., Magro & Magro, Morgantown, W.Va., for defendant.

MEMORANDUM OPINION

KIDD, District Judge.

Pending before the Court are cross-motions for summary judgment filed by the parties. The underlying material facts of this action are not disputed. The only issue to be decided is one of law. Therefore, this action is ripe for summary judgment.

The plaintiffs in this action are retired coal miners who were former employees of Reliable Coal Company ("Reliable") and pensioners under the United Mine Workers of America ("UMWA") 1974 Pension Plan or the surviving spouse of such a pensioner. The defendant is the UMWA 1974 Benefit Plan and Trust ("BP & T"), one of four separate employee benefit plans collectively referred to as the UMWA Health and Retirement Funds ("Funds").

The 1974 BP & T, originally provided health and other non-pension benefits ("health benefits") to all 1974 Pension Plan pensioners. Under the National Bituminous Coal Wage Agreement ("Wage Agreement") of 1978, however, the bargaining parties agreed that each signatory employer was required to provide health benefits to the 1974 Pension Plan pensioners, for whom it was the last signatory employer. 1978 Wage Agreement, Article XX(c)(3)(i). The 1981 Wage Agreement continued this arrangement. 1981 Wage Agreement, Article XX(c)(3)(i).

The 1974 BP & T continued to exist after the 1978 and 1981 Wage Agreement, for the sole purpose of providing health benefits only to eligible 1974 Pension Plan "orphan" pensioners who ceased to receive those benefits because their last signatory employer was "no longer in business." 1978 and 1981 Wage Agreements, Article XX(c)(3)(iii).

Being a signatory employer to the 1978 Wage Agreement, Reliable provided health benefits to the plaintiffs, who are 1974 Pension Plan pensioners or their eligible surviving spouses. Reliable ceased its coal mining activities in April 1979. Nevertheless, Reliable continued to receive income from the sale of coal until March 1981, at which time it ceased all operations. Reliable withdrew from the Bituminous Coal Operator's Association, Inc., in April 1980. Reliable, however, continued to provide health benefits to the plaintiffs under the 1978 Wage Agreement through April 30, 1981. Thereafter, Reliable voluntarily agreed to provide health benefits to the

plaintiffs from June 1, 1981, through May 1982. Reliable was not, however, a signatory to the 1981 Wage Agreement.

The president of Reliable, in May 1982, informed the BP & T that Reliable was no longer in business as of March 1981 and requested that the BP & T provide health benefits to the plaintiffs. Defendant's Exhibit G, page 27. Reliable had sold all of its equipment and shut down operations, becoming an inactive corporation in the process of liquidation. Defendant's Exhibit G, pages 14–15, 23.

In August 1982, the BP & T issued health cards to the plaintiffs. However, the trustees of the BP & T, with Chairman Combs dissenting, revoked the health cards from the plaintiffs. Defendant's Exhibits H and I.[1] The trustees decided that none of the plaintiffs were eligible for health benefits because Reliable was not "no longer in business" under the BP & T (1978) prior to June 7, 1981, and since Reliable was not a signatory to the 1981 Wage Agreement, the plaintiffs could not be considered for eligibility under the BP & T (1981). Defendant's Exhibit J.

The "no longer in business" requirement was not defined by the bargaining parties in the 1978 Wage Agreement nor in the BP & T (1978). Therefore, pursuant to their authority under Article III of the BP & T (1978), the trustees adopted a definition. The adopted definition is as follows:

1. the company claims that it is no longer in business by notifying the Funds in writing that the Company is no longer in business and will not resume operations and thus requests that the Funds, in reliance upon the company's statement, make payments to any appropriate beneficiaries eligible under provisions of the amended 1974 Benefit Plan and Trust; and

2. the company has not received income from the production or sale of coal, or transportation of coal, or related activities, for at least six months even if it retains a license to engage in coal mining

---

1. Eight of the plaintiffs were at first determined to be eligible. However, the trustees reversed their first determination and also found these eight plaintiffs ineligible. Defendant's Exhibit I.

or processing within the applicable state or states and retains an office.

A company may still be in business even if it satisfied # 2 if circumstances clearly indicate that the company remains in business.

Q & A H–16, Part II; Defendant's Exhibit F.

The trustees determined that Reliable did not satisfy the "no longer in business" definition, even though it had ceased operations on March 26, 1981, the date Reliable last received income from the sale of coal, because that date was less than six months before June 7, 1981, the date the 1981 Wage Agreement went into effect. Therefore, since Reliable was not a signatory to the 1981 Wage Agreement, the plaintiffs were not eligible. Defendant claims this decision is supported by substantial evidence and in accordance with the BP & T.

Plaintiffs claim the trustees' decision was arbitrary and capricious. First, plaintiffs argue that the terms of the BP & T (1978) should have been extended past June 7, 1981, and applied to plaintiffs when, in May 1982, Reliable quit providing health benefits and requested the BP & T to provide the same. Second, plaintiffs argue that the trustees should have applied the BP & T (1981). Third, plaintiffs argue that defendant should have granted plaintiffs the health benefits and then commenced legal action against the parent corporation of Reliable for subrogation.

■ In reviewing the decision of trustees to deny benefits, a federal court is limited to determining whether the trustees' action was arbitrary or capricious. *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003 (4th Cir.1985); *LeFebre v. Westinghouse Electric Corp.*, 747 F.2d 197 (4th Cir.1984). Under this standard, the court must determine whether the decision of the trustees was supported by substantial evidence and whether they have made an erroneous decision on a question of law. *See LeFebre, supra*, at 204. If the trustees' decision is based upon substantial evidence and is not arbitrary and capricious, then that decision is not to be disturbed. *Id.* at 208.

The Court believes that the facts of this case are clear. The Exhibits filed herein reveal no genuine issue as to any material fact. It would appear that the only issue in this case is one of law.

■ Reliable was not a signatory to the 1981 Wage Agreement. Therefore, the amendments to the BP & T in the 1981 Wage Agreement do not apply. Accordingly, the only issue of law is the interpretation by the trustees of the 1974 BP & T as amended by the 1978 Wage Agreement.

The first step in interpreting the BP & T is to look at the purpose behind it.

Coal operators for many years have agreed to pay and have paid health benefits to miners. Prior to 1978, coal operators provided health benefits through an industry-wide trust fund. In a historic development in 1978, each company signatory to the 1978 collective bargaining contract agreed to provide benefits through its own insurance carrier rather than through a trust fund. Virtually the same agreement was executed in 1981 and 1984 during the periodic renegotiation of the expired contract.

*Dist. 17 v. Allied Corp.*, 765 F.2d 412, 420 (4th Cir.1985). However, the BP & T remained as a safety net to provide health benefits to orphan pensioners not covered by some other plan. As stated by Judge Chapman in his dissenting opinion in *Dist. 17 v. Allied Corp., supra* 421, which was originally the majority opinion of the original three-judge panel, reported at 735 F.2d 121, at 130–131:

The record clearly shows that this trust was created to provide for retired miners who became "orphans" by not being covered under some other plan. During negotiations preceding the 1978 Wage Agreement, BCOA tried to eliminate the 1974 Benefit Plan and Trust, but UMWA insisted that the 1978 Wage Agreement continue contributions to the 1974 plan to provide benefits to pensioners, who would otherwise lose benefits when benefits were changed from a multi-employer plan, covering all active and retired miners, to an individual company plan. As a result of collective bargaining the 1978

Wage Agreement provided for a continuation of payments by the employers into the 1974 plan for the purpose of providing for retired miners not covered by some other plan. This trust is the safety net intended to catch the plaintiffs, and it may not be removed by the trustees, now that it is needed.

The plaintiffs in the case at bar are orphan pensioners for which the BP & T was created. The plaintiffs, being pensioners under the 1974 BP & T, received health benefits from Reliable under the 1978 Wage Agreement. Reliable then voluntarily provided health benefits after March 26, 1981, the date Reliable ceased operations. Reliable subsequently stopped providing health benefits after May 1982. At this time, Reliable officially notified the BP & T that it had ceased operations as of March 1981, and requested the BP & T to provide health benefits to the plaintiffs. Plaintiffs' only alternative was to turn to the 1974 BP & T, for the very purpose justifying its existence.

The Court believes, as did the court in *Maggard v. O'Connell*, 671 F.2d 568 (D.C. Cir.1982), that the trustees are preserving the corpus of the trust at the expense of the intended beneficiaries, the plaintiffs. The trustees would have these plaintiffs slip through the "safety net" provided in the 1974 BP & T and suffer the consequences of the high cost of health care in the twilight of their lives. The Court, however, will not allow the trustees to wash their hands of these plaintiffs. The trustees clearly erred in their interpretation of the 1974 BP & T (1978), and the application of Q & A H-16, Part II, thereto.

The Court does not find error in the BP & T's definition of the term "no longer in business," as applied in the 1974 BP & T (1978). *Dist. 17 v. Allied Corp., supra* at 416. Also, as of March 1981, the BP & T correctly determined that Reliable did not meet the "no longer in business definition" because of the six month "no income" requirement. The error came when the trustees required Reliable to satisfy the six month "no income" requirement by June 7,

1981, because Reliable was not a signatory to the 1981 Wage Agreement.

The June 7, 1981, date is referred to in the 1974 BP & T as amended by the 1981 Wage Agreement, not the 1974 BP & T as amended by the 1978 Wage Agreement. Had Reliable been a signatory to the 1981 Wage Agreement, then the June 7, 1981, date would be relevant since Reliable would have been bound by the 1974 BP & T as amended by the 1981 Wage Agreement. However, only the 1974 BP & T as amended by the 1978 Wage Agreement, the last Wage Agreement entered into by Reliable, would be applicable and binding upon the parties. Therefore, the 1974 BP & T (1978) should have been used by the trustees in determining eligibility of the plaintiffs for health benefits.

The 1974 BP & T (1978), Article II F provides:

F. *Pensioners*

Health and death benefits under Article III hereof shall also be provided to any Pensioner who receives pension benefits under the 1974 Pension Plan, or any successor thereto, and who would otherwise cease to receive benefits because the signatory Employer (including successors and assigns) with whom such Pensioner last worked as a classified Employee is no longer in business ...

Then, the definition of "no longer in business" in Q & A H-16, Part II, would be applied to see whether the pensioner would be eligible.

This straightforward application applied to the plaintiffs clearly shows their right to health benefits. In May 1982, Reliable sent the official "no longer in business" notice to the BP & T. The uncontraverted evidence shows (1) Reliable claimed it was no longer in business and will not resume operations; and (2) Reliable has not received income from the production or sale of coal, or transportation of coal, or related activities since March 1981, a period of at least six months. Therefore, the plaintiffs were eligible for benefits as of June 1, 1982, when Reliable stopped providing the same. The trustees' decision to the contrary requires reversal in that " 'there has

been a clear error of judgment.' *Bowman Transporation [sic], Inc. v. Arkansas Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)." *Berry v. Ciba-Geigy Corp., supra* at 1008.

Accordingly, it is hereby ORDERED that defendant's motion for summary judgment is DENIED and plaintiffs' motion for summary judgment is GRANTED.

It is further ORDERED that the 1974 BP & T shall provide health and non-pension benefits under Article II. A. to the plaintiffs and their eligible spouses and dependants forthwith.

It is further ORDERED that the 1974 BP & T shall be liable for all eligible health and non-pension expenses under Article III of the 1974 BP & T, as amended, incurred by the plaintiffs and their eligible spouses and dependants from June 1982, and judgment shall be entered accordingly for the plaintiffs, with pre-judgment interest thereon at the rate allowed by law, and costs, including reasonable attorney fees.

The Clerk is directed to transmit certified copies of this Order to counsel of record herein.