**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1398**

VEDA M. ODLE,

           Plaintiff - Appellant,

      v.

UMWA 1974 PENSION PLAN; TRUSTEES OF THE UNITED MINE
WORKERS OF AMERICA 1974 PENSION PLAN, as Plan Administrator of the
UMWA 1974 Pension Plan,

           Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at
Abingdon.  James P. Jones, District Judge.  (1:17-cv-00018-JPJ-PMS)

Argued:  May 7, 2019                   Decided:  June 20, 2019

Before KEENAN, WYNN, and FLOYD, Circuit Judges.

Reversed and remanded by unpublished per curiam opinion.

**ARGUED:** Richard F. Hawkins, III, THE HAWKINS LAW FIRM, PC, Richmond,
Virginia, for Appellant.  Christina Battaglia Porras, UMWA HEALTH & RETIREMENT
FUNDS, Washington, D.C., for Appellees.  **ON BRIEF:** Glenda S. Finch, General
Counsel, Carolyn O. Dutrow, Associate General Counsel, Office of General Counsel,
UMWA HEALTH & RETIREMENT FUNDS, Washington, D.C., for Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In this case arising under the Employee Retirement Income Security Act of 1974 (ERISA), Veda Odle (Ms. Odle) challenges the amount of a survivor's annuity benefit awarded to her under the provisions of the United Mine Workers of America 1974 Pension Plan ("the Plan"). After exhausting her appeal rights with the Plan, Ms. Odle filed a civil action in federal district court. The case was referred to a magistrate judge, who made findings that the Plan (1) failed to provide a full and fair review of Ms. Odle's claim and (2) acted unreasonably by failing to award additional years of credited service. The district court rejected the magistrate judge's recommendation and granted summary judgment for the Plan. For the reasons that follow, we reverse and remand for further proceedings.

I.

Ms. Odle's late husband, Ray Odle (Mr. Odle), worked in the coal mining industry from approximately 1973 to 2002 in both classified, or union, jobs and nonclassified, or nonunion, jobs. He died from black lung disease at age 54 on March 18, 2010.

This dispute relates to the calculation of Mr. Odle's credited service based on his classified work, which entitled Ms. Odle to a survivor's annuity under the Plan. As background, the Plan calculates pension benefits based on a mine worker's years of credited service multiplied by a set accrual rate. In order to count as credited service, the employment must be classified work for an employer that is a signatory to the National Bituminous Coal Wage Agreement (Wage Agreement), which is an industry-wide union

2

agreement for the coal industry. Under the Wage Agreement, classified work includes "[a]ll . . . [e]mployees working in or about the mine . . . except essential supervisors in fact such as mine foremen, assistant mine foremen . . . and other such supervisors as are in charge of any class of labor inside or outside the mines and who perform no production work." J.A. 343; 394. Therefore, work as a foreman or supervisor is not classified employment.

Under Article IV of the Plan, an employee receives credit for a year of service for working at least 1,000 hours of service in a classified position. Credited service is also awarded for partial years as follows: service of 750–900 hours receives credit for 3/4 year; service of 500–749 hours receives credit for 1/2 year; service of 250–499 hours receives credit for 1/4 year; and service of 249 hours or less in a calendar year receives no credit.

In August 2010, the Plan notified Ms. Odle that it would be awarding her a survivor's annuity based on 15.25 years' credited service by Mr. Odle from 1973 through 1988. Ms. Odle challenged this decision and requested a hearing, claiming that Mr. Odle had worked additional years of credited service. After further correspondence, submissions, and a hearing in March 2011, the Plan awarded Ms. Odle an additional .25 years' credit but denied credit for the remaining 13.5 years she requested. Ms. Odle requested a second hearing so that she could provide statements from Mr. Odle's co-workers in support of her claim. After a second hearing, the Plan sustained its denial of Ms. Odle's claims on August 1, 2014.

The Plan's reasons for denying Ms. Odle's claim were, in sum, that (1) Mr. Odle's

3

employers did not report any hours of classified work to the Plan during the relevant time period (from February 1989 through 1994);[1] (2) Mr. Odle's timesheets showed he worked as a foreman after February 1989; (3) Mr. Odle was paid a salaried rate; and (4) no active union dues were deducted from his wages. The Plan also reviewed the statements that Ms. Odle provided from Mr. Odle's co-workers. The Plan found these statements to be unreliable and contradicted by wage and employment records showing that Mr. Odle was not engaged in classified work. Finally, the Plan relied on a 1995 audit of Mr. Odle's employer, Dale Coal, that the Plan claimed supported its findings, but it did not provide a copy of the Dale Coal audit to Ms. Odle.

In May 2017, Ms. Odle filed a complaint in federal district court, alleging that the Plan had improperly denied her claim and requesting a remand back to the Plan's Trustees for further review. The district court referred the case to the magistrate court. Following a hearing, the magistrate judge issued a report recommending that Ms. Odle's claims be remanded to the Plan's Trustees for further consideration because (1) the Plan failed to provide Ms. Odle an opportunity for a full and fair review of its decision; and (2) the Plan abused its discretion in its determination that Ms. Odle's survivor's annuity should be based on only 15.5 years of credited service by Mr. Odle. In making these findings, the magistrate judge focused specifically on the Plan's failure to provide Ms. Odle with a copy of the Dale Coal audit the Plan relied upon to deny her request for

---

[1] The Plan's Trustees also found that Mr. Odle's work for other coal mines after 1994 was not credited service because his employers were not signatories to a wage agreement. Ms. Odle does not challenge this finding on appeal.

4

additional credited service during the administrative review process.

The district court rejected the magistrate judge's report, finding that "[w]hile there is no doubt that the Trustees did not strictly comply with ERISA's procedural requirements," J.A. 564, there was no credible indication that providing the Dale Coal audit during the review process would have made any difference. Moreover, "[t]he uncontradicted evidence shows that Mr. Odle's employers did not record any classified hours for the periods at issue, he did not pay union dues, and that his social security earnings records showed that he earned a salary after 1988." J.A. 566. The district court found the evidence presented by Ms. Odle, including the statements submitted by Mr. Odle's co-workers, to be speculative and insufficient to overcome the records supporting denial. Therefore, the district court granted summary judgment in favor of the Plan.

Ms. Odle now appeals, arguing that the Plan abused its discretion by failing to provide her with a copy of the Dale Coal audit and by denying her claim.

II.

We review de novo a district court's grant of summary judgment in favor of an ERISA plan administrator, employing the same standards governing the district court's review of the plan's decision. *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 629 (4th Cir. 2010). Where a benefits plan by its terms confers discretion on a trustee, the "trustee's discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." *Booth v. Wal-Mart Stores, Inc. Assocs.*

5

*Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000). Here, it is undisputed that the Plan's terms explicitly grant the trustees authority to "have full and final determination as to all issues concerning eligibility for benefits." Plan Art. XII(A), J.A. 268.

In determining whether a trustee's exercise of discretion is reasonable, a reviewing court may consider various factors, such as:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Booth*, 201 F.3d at 342–43.

A reviewing court should also keep in mind that "what is being reviewed here is not the findings of an agency but rather the decision of private trustees based on evidence collected by a hearing officer employed by a private trust," and that "those close to the trust indeed have a duty to preserve the corpus of that trust and, accordingly, are naturally disinclined to make awards from it." *Maggard v. O'Connell*, 671 F.2d 568, 571 (D.C. Cir. 1982). Although this structural conflict of interest does not alter our standard of review, the presence of a such a conflict is "one factor among many that a reviewing judge must take into account." *Williams*, 609 F.3d at 631 (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008)).

6

III.

The Plan procedurally erred by denying Ms. Odle the opportunity to review the Dale Coal audit during the administrative process. Because the error prejudiced Ms. Odle, we reverse and remand for further proceedings to provide Ms. Odle another chance to contest the Plan's denial of her claim.

ERISA requires that any plan participant whose claim for benefits has been denied be given a "reasonable opportunity . . . for a *full and fair* review" of the decision. 29 U.S.C. § 1133(2) (emphasis added). As part of this "full and fair review," the claimant must "be given reasonable access to documents relevant to her claim." *Gagliano v. Reliance Standard Life Ins. Co.*, 547 F.3d 230, 235 (4th Cir. 2008) (citing 29 C.F.R. § 2560.503–1(h)(1) to (2) (2008)); *see also* 29 C.F.R. § 2560.503–1(h)(2)(iii) (providing "that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits"). Under the regulations, a document, record, or other information is considered "relevant" to a claim if it "[w]as relied upon" or "submitted, considered, or generated in the course of making the benefit determination." 29 C.F.R. § 2560.503–1(m)(8).

Based on the regulations' plain language, the Plan was obligated to provide Ms. Odle a copy of the Dale Coal audit the Plan explicitly relied on when denying her claim.[2] By

_____

[2] Although the district court found "no proof" in the record that Ms. Odle specifically requested the audit, J.A. 563 n. 7, the record contains a letter from Ms. Odle to a third party in which Ms. Odle recounts that she requested a copy of the Dale Coal audit from

7

failing to disclose that audit during the administrative process, the Plan denied Ms. Odle the "full and fair review" of her claim that she was entitled to under ERISA. *See Gagliano*, 547 F.3d at 235. Although the Plan notes that audit papers are "not typically received by non-audit staff or [ERISA] claimants" because "they are voluminous, they contain confidential information regarding company business records and other employees, and they are not generated for reviewing pension claims," Appellees' Br. at 42, these considerations do not overcome the plain language of the regulations mandating disclosure of documents relevant to an ERISA claim.

Although the Plan's failure to disclose the audit was in error, "[n]ot all procedural defects will invalidate a plan administrator's decision." *Ellis v. Metro. Life Ins. Co.*, 126 F.3d 228, 235 (4th Cir. 1997) (quoting *Brogan v. Holland*, 105 F.3d 158, 165 (4th Cir. 1997)), *abrogated on other grounds by Glenn*, 554 U.S. at 116–17. Therefore, we must determine if "a causal connection" exists between the procedural defect and the denial of Ms. Odle's claim. *Id.* at 238.

We conclude that such a causal connection exists because the Plan's failure to disclose the Dale Coal audit prevented Ms. Odle from pursuing further investigation and arguments in support of her claim. Having now had the opportunity to review the audit, which was not shared with her until after the administrative process had concluded, Ms. Odle contends that several facts in the audit support her claim. For example, the audit faults Dale Coal for underreporting the classified hours of its employees and for engaging

the Plan but was refused. On appeal, the Plan does not meaningfully dispute the credibility of Ms. Odle's account, except to say that "Ms. Odle never requested the audit in writing." Appellees' Br. at 41 n.4.

in a pattern of reporting a seemingly implausible number of employees as non-classified foremen to avoid making pension contributions. The audit specifically cites Mr. Odle's timesheets during the period of October 1988–February 1989 as an example of this dubious practice. Ms. Odle contends that the audit also shows her husband at least occasionally received overtime payments, which is inconsistent with a nonclassified position.

The Plan acknowledges that the audit found errors in Dale Coal's reporting, but it claims that the audit already corrected for these errors and that Mr. Odle received additional credit as a result. The Plan argues that the audit's findings are reliable because the auditors had every motivation to ensure that classified hours were being properly reported and contributions made to the Plan. Finally, the Plan argues that the audit is consistent with other evidence, including social security and wage records, showing Mr. Odle was paid a salary and did not pay union dues during the relevant time period.

On balance, we conclude that the Plan's failure to disclose the Dale Coal audit was prejudicial to a degree sufficient to constitute an abuse of discretion, and a remand would not be futile. This conclusion accords with ERISA's purpose "to promote the interests of employees and their beneficiaries in employee benefit plans, and to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (internal quotation marks and citations omitted). "Given this goal, Congress assured plan participants of procedural fairness, by mandating that plan administrators provide a 'full and fair review' of claims and the specific reasons for claim denials." *Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 157 (4th Cir. 1993). Accordingly, procedural

9

guidelines including the right to a full and fair review "are at the foundation of ERISA." *Id.*

With these principles in mind, it was unreasonable for the Plan to rely on an audit that documented potentially fraudulent underreporting of classified hours—using Mr. Odle's timesheets as a specific example—without disclosing the audit to Ms. Odle. Moreover, the lack of disclosure prejudiced Ms. Odle by preventing her from presenting further arguments and evidence based on the audit's findings. On remand, Ms. Odle must be given an opportunity to contest the Plan's denial based on a full disclosure of the documents and evidence relevant to her claim.

IV.

For these reasons, we reverse the judgment of district court and remand for further proceedings consistent with this opinion.

*REVERSED AND REMANDED*