857 F.2d 231
 Eugene D. PRATT, Plaintiff-Appellant,
v.
Joseph P. CONNORS, Sr.; Paul R. Dean; William Miller;
Donald E. Pierce, Jr., Trustees of United Mine Workers of
America Health and Retirement Funds; Betty Veach, Director,
Morgantown Field Service Office of UMWA Health and
Retirement Funds; John Madden, Hearing Office of Morgantown
Field Service Office of UMWA Health and Retirement Funds,
Defendants-Appellees.
 No. 87-2221.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 2, 1988.
Decided Sept. 19, 1988.
 
 James A. McLaughlin (McLaughlin & Curry, Fairmont, W.Va., on brief), for plaintiff-appellant.
 Andree M. St. Martin, Asst. Gen. Counsel (Israel Goldowitz, Deputy Gen. Counsel, Gerald E. Cole, Jr., Margaret E. Topps, Catherine H. Mitchell, United Mine Workers Of America Health and Retirement Funds, Washington, D.C.; Mike Magro, Jr., Magro & Magro, Morgantown, W.Va., on brief), for defendants-appellees.
 Before RUSSELL and HALL, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, sitting by designation.
 K.K. HALL, Circuit Judge:
 
 
 1
 Eugene D. Pratt, a retired coal miner, appeals an order of the district court granting summary judgment in favor of defendants Joseph P. Connors, Sr., et al, the Trustees of United Mine Workers of America Health and Retirement Fund ("the Trustees" or "the Fund"). Adopting the recommendation of the United States magistrate in this civil action brought pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), the district court concluded that the Fund properly denied Pratt's application for enhanced retirement benefits. We disagree and reverse.I.
 
 
 2
 Pratt worked intermittently in the bituminous coal industry from December, 1946, until his retirement in July of 1981. He subsequently applied for pension benefits under the 1974 United Mine Workers Pension Plan ("the Plan") as administered by the Trustees. The Plan provides for two different levels of pension benefits: (1) a basic Deferred Vested Pension which requires 10 years of signatory service in the coal mining industry, and (2) a Deferred Vested Pension-Special, which pays higher benefits but requires 20 years of signatory service. It is the level of benefits to which Pratt is entitled that is at issue.
 
 
 3
 In his initial application, Pratt sought benefits under the "Special." The Trustees, however, concluded that Pratt could establish no more than 19 3/4 years of signatory service. Accordingly, benefits were awarded only at the lower of the two pension levels.
 
 
 4
 Pratt subsequently requested and received an administrative hearing in which he sought to establish an entitlement to an additional period of credited service. This claim for additional service was based upon a period between March, 1959, and October, 1959, when he was hospitalized and recovering from surgery on his back for a herniated disk. Pratt contended that this period constituted time during which he was unable to work as a result of an "occupational disease" and thus should have been credited to him under a Trustees' policy statement adopted as part of the court-approved settlement in Maggard, et al v. Huge, et al, Civil Action No. 76-2219 (D.D.C. March 14, 1979).[1]
 
 
 5
 In support of his position Pratt introduced the only medical evidence of record in this matter. That evidence consisted of the hospital records from 1959 and two letters from his treating physician, Dr. Justus C. Pickett, M.D., who reviewed those records and expressed his medical opinion on the nature of Pratt's back ailment.
 
 
 6
 In a letter dated April 11, 1983, Dr. Pickett noted that disk problems were common among miners. He further stated that the condition "most occurred ... as a result of prolonged stress on the back with constantly lifting, straining and so forth. I therefore am fully of the opinion that this condition is the result of his [Pratt's] occupation." This view was reiterated in a subsequent letter dated June 22, 1983, wherein Dr. Pickett stated that Pratt's 1959 back condition constituted "if not a specific mine injury, certainly a related mine problem."
 
 
 7
 Notwithstanding Dr. Pickett's undisputed medical opinion, the Trustees determined, in a report issued by the Fund's Office of Regional Operations on September 16, 1983, that additional service credit would not be granted. The report concluded that Pratt's proffered evidence did not establish the existence of "a recognized occupational disease."
 
 
 8
 On July 11, 1986, Pratt filed the instant civil action in district court invoking federal jurisdiction under ERISA and alleging that the Trustees' denial of enhanced benefits was arbitrary and capricious. Cross-motions for summary judgment were filed and referred to the United States magistrate for report and recommendation. In the ensuing report, the magistrate concluded that Pratt's back condition had arisen "out of and in the course of classified coal industry employment." The magistrate reasoned, however, that the Trustees had acted within their limits of discretion when they imposed a limiting definition of "occupational disease" that restricted the term to conditions "endemic" or "peculiar" to coal mining. Since, in the magistrate's view, Pratt had not shown that a herniated disk was an ailment "endemic to coal mining," it was proper for the Fund to refuse to recognize the condition as an "occupational disease."
 
 
 9
 Based upon the magistrate's analysis and recommendation, the district court granted summary judgment in favor of the Trustees. This appeal followed.II.
 
 
 10
 On appeal, Pratt contends that the Trustees' interpretation of the Fund's pension requirements is arbitrary and capricious. Specifically, appellant argues that the addition of the term "endemic" to the plain language of the Maggard settlement is an unjustified distortion that produces a result utterly at odds with the intent of that settlement. We find appellant's argument persuasive.
 
 
 11
 The policy statement adopted by the Trustees in 1973 to give concrete form to the Maggard settlement defines an occupational disease as one "arising out and in the course of coal industry employment." The statement further provides that a disease shall be deemed to arise out of such employment only if it is apparent that:
 
 
 12
 a. A direct causal connection exists between the conditions under which work is performed and the occupational disease;
 
 
 13
 b. The applicant's inability to work in the coal industry is caused by the disease and can be fairly traced to the employment as the proximate cause; and
 
 
 14
 c. Such disease must appear to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence.
 
 
 15
 As the magistrate's report recognized, the undisputed medical evidence conclusively establishes that Pratt's 1959 back problems did arise from the nature of his employment and that his inability to work for approximately nine months was due to that ailment.[2] The Trustees have consistently maintained, however, that the "direct causal connection" prong of the Maggard statement can only be satisfied by demonstrating that the ailment asserted is particularly related to coal mining. Although the Trustees' decision is entitled to a deferential standard of judicial review, e.g. LeFebre v. Westinghouse Electric Corp., 747 F.2d 197 (4th Cir.1984), we find their position flawed for a variety of reasons.
 
 
 16
 The most obvious defect in the Trustees' position lies in the fact that the word "endemic" does not appear in the Maggard policy statement. Relying upon their own Resolution 92, a statement of pension eligibility in effect prior to the adoption of the 1974 pension plan, the Trustees suggest that the Fund has consistently viewed occupational diseases as limited to certain specific conditions such as pneumoconiosis and silicosis which are peculiar to coal mining.
 
 
 17
 Unfortunately, the Trustees' argument proves too much. The Fund's restrictive view of disability for occupational disease was indeed well established at the time the Maggard settlement was adopted in 1979. In light of that fact, the omission of any "endemic" requirement from the settlement language cannot be presumed to be accidental. The plain language of the settlement envisions that a physical ailment causally related to a miner's work is to be considered an occupational disease. Obviously, a requirement that the ailment also be "peculiar" or, as the Trustees seem to suggest, "exclusive" to coal mining adds a significant additional requirement that was clearly omitted from the terms of the Maggard settlement.
 
 
 18
 The purpose underlying the Maggard policy statement is virtually self-evident. It insures that miners who experience periods of physical disability stemming from the conditions of their employment will receive appropriate service credit toward their pensions even if the disability did not result in a contemporaneous workers compensation award. Appellant in this instance would seem to fall squarely within the class of intended beneficiaries of that policy. (1) He suffered an ailment which, according to competent medical evidence, is regularly experienced by miners working in like circumstances; (2) he missed work as a result of that ailment; and (3) the ailment originated in the risks connected with the physical demands of mining. A decision to deny appellant's application for additional service credit based primarily upon a superseded policy interpretation flies in the face of the essential purpose of the Maggard settlement.
 
 
 19
 We are aware that appellant's burden in seeking to overturn the Trustees' decision as affirmed by the district court is a heavy one. Nevertheless, in considering whether the Trustees have acted in an arbitrary and capricious fashion, we are convinced, as was the court in Maggard v. O'Connell, 671 F.2d 568, 572 (D.C.Cir.1982), that judicial review of the denial of benefits must be undertaken with a "stern hand and flinty eye." To do otherwise would unduly encourage the Trustees to overvalue their duty to preserve the trust corpus "at the expense of the intended beneficiaries." Id.[3]
 
 
 20
 We are, thus, fully satisfied that the judicial deference normally due the Trustees cannot justify their action in this case. The interpretation of the Maggard statement proffered by the Trustees constitutes a unilateral modification of a court ordered settlement which diminishes the rights not only of appellant but also of a potentially significant group of other miners who may in the future also require additional pension credit based on a hitherto unrecognized occupational disease. We conclude, therefore, that the denial of Pratt's application for additional service credit was contrary to Fund policy, arbitrary and capricious on its face, and insupportable as a matter of law.
 
 III.
 
 21
 Accordingly, the decision of the district court granting summary judgment in favor of the Trustees is reversed. The case is hereby remanded to the district court with directions that summary judgment be entered in favor of appellant.
 
 
 22
 REVERSED AND REMANDED.
 
 
 
 [1]
 The Maggard settlement, which the Trustees concede to be part of Fund policy, provides that a miner is eligible for up to four additional years of credited service for a period of disability for a definite period of time due to a mine injury or mine-related occupational disease
 
 
 [2]
 The Trustees do not explicitly concede that Pratt's herniated disk can be "fairly traced" to his employment. There is, however, nothing in the record to contradict Dr. Pickett's informed opinion that the ailment was the result of the type of prolonged stress normally endured by miners such as Pratt who worked in mines with low coal
 
 
 [3]
 The court in O'Connell noted that trustees of a private fund operate in a different factual context than government employees whose decisions are more commonly reviewed under an arbitrary and capricious standard. Such trustees lack the tenure and job security that generally insulates government officials from outside pressures. O'Connell, 671 F.2d at 571