**Orville HUFF, Plaintiff,**

v.

**UNITED MINE WORKERS OF AMERICA, HEALTH AND RETIREMENT FUNDS, et al., Defendants.**

**Civ. A. No. 5:91–0677.**

United States District Court,
S.D. West Virginia,
Beckley Division.

Sept. 3, 1992.

Ray E. Ratliff, Jr., Charleston, W.Va., for plaintiff.

Mary Jane Pickens, Caldwell, Cannon–Ryan & Riffee, Charleston, W.Va., Andree M. St. Martin, Asst. Gen. Counsel, Glenda S. Finch, UMWA Health & Retirement Funds, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending are the parties' cross motions for summary judgment, pursuant to *Rule* 56 of the Federal Rules of Civil Procedure. Response and reply briefs have been submitted, and now this matter is ripe for the Court's attention.

Huff is a former coal miner who was employed in the bituminous coal industry in West Virginia intermittently between the years of 1951 and 1983. Huff applied for pension benefits from the UMWA 1974 Pension Plan on October 23, 1984, when he was 51 years old, claiming that he is entitled to a service pension credit and/or a disability pension. On December 28, 1984, the Trustees determined that Huff was entitled to 14½ years of service pension credit. Huff appealed this decision, asking the Trustees to reconsider and on December 6, 1989, the Trustees determined that Huff was entitled to an adjusted total of 16¾ years service pension credit.

The Trustees denied Huff's application for disability pension on August 7, 1989, because they determined that he was not totally disabled as the result of a mine accident. The Trustees' medical specialists reviewed Huff's pension file and concluded that the evidence failed to establish a sufficient causal connection between any prior mine accident and the reasons for which he was adjudicated as totally disabled by the Social Security Administration, effective June 4, 1988, some 26 years subsequent to a 1962 mine accident and 28 years after a 1959 mine accident. Huff appealed, presenting additional documentation, including a West Virginia Workers Compensation Fund award which granted Huff compensation for life based on occupational pneumoconiosis, occupations hearing loss and multiple prior injuries. On appeal the Fund's medical specialists reviewed Huff's complete file, including the new information, and on January 19, 1990, the Trustees sustained the previous denial of a disability

pension, again finding that there was no causal connection between any mine accident and Huff's subsequent disability.

To be entitled to a disability pension under the 1974 Pension Plan,

"A participant who (a) has at least 10 years of signatory service prior to retirement, and (b) becomes totally disabled as a result of a mine accident occurring on or after February 1, 1988, shall, upon retirement (hereinafter disability retirement) be eligible for a pension while so disabled. A Participant shall be considered to be totally disabled only if by reason of such Participant is subsequently determined to be eligible for Social Security disability insurance benefits under title II of the Social Security Act or its successor."

See 1974 Pension Plan, Article II, Section C, Disability Retirement. Previously Huff had filed an application for Social Security disability insurance benefits on July 23, 1984, alleging disability as of September 15, 1983, due to a combination of impairments.[1]

Between 1984 and 1987 at least six physicians performed five medical examinations of Huff and on March 17, 1987, Huff reapplied for Social Security disability insurance benefits, identifying his disability conditions as "ulcers, thyroid condition, high blood pressure, diabetes, arthritis of spine, heart trouble, angina." See Social Security Disability Application, March 17, 1987, at paragraph 4. Huff's second claim for Social Security disability benefits also was denied initially.

Huff was then evaluated by Drs. Craythorne (8/7/87), Huntwork (7/30/87), and Crawford (8/27/87) at the request of his attorney. These three doctors concluded he was disabled.

After his second denial for Social Security benefits, the Administrative Law Judge reviewed Huff's file, conducted a hearing and found that the medical evidence established that Huff had severe impairments consisting of diabetes, hypertension, arthritis, coronary artery disease with angina, gastroesophageal reflux disease, history of peptic ulcer disease, chronic constipation, chronic obstructive pulmonary disease, hiatal hernia, acute thrombophlebitis with deep vein thrombosis of the right leg, sensory neural hearing loss, and obesity, *inter alia*, that Huff "has been under a disability, as defined in the Social Security Act since June 4, 1988, but not prior thereto ..." and that "[Huff's] testimony was not fully credible and was not totally supported by the objective medical evidence of record." Thus, Huff qualifies partially under the disability retirement qualifications of Article II, Section C.

However, to be fully eligible for disability pension benefits from the 1974 Pension Plan, Huff also had to establish that the mine accident "proximately caused" or was "substantially responsible" for his "total disability for SSDI purposes." *Boyd v. Trustees of UMWA Health and Retirement Funds*, 873 F.2d 57, 60 (4th Cir.1989); *Robertson v. Connors*, 848 F.2d 472, 475 (4th Cir.1988); see 1974 Pension Plan, Article IIC(b).

To be entitled to a service pension, Huff must satisfy the eligibility criteria for deferred vested retirement—Section E of Article II, which applies to participants who leave the coal industry before age 55. Huff's last day of credited service was in 1984 when he was 51 years of age. As determined previously by the Trustees, Huff is entitled to 16¾ years of credited service, all signatory. Therefore, he is eligible for a deferred vested pension, but to qualify for full service pension benefits under the terms of the plans, Huff must establish that he qualifies with at least 20 years of credited service.

Although Huff complains of being injured in a number of mine related accidents, he complains most strenuously about accidents in 1959 and 1962 that, according to Huff, resulted in his total disability due to a mine accident. The Defendants assert that Huff's disability does not have a suffi-

---

1. Huff identified his disability conditions as "high blood pressure, diabetes, arthritis of the spine, emphysema and silicosis." See Social Security Disability Application, July 23, 1984, at paragraph 4. That prior application was denied on October 10, 1984.

cient causal link to any mine accident, including the 1959 and 1962 mine accidents and, therefore, his disability was not a direct result of a mine accident.

The Trustees do not dispute Huff's total disability as adjudicated by the Administrative Law Judge, as of June 4, 1988. The only issue as to Huff's claim for disability pension is whether the Trustees' determination that there was an insufficient causal link between Huff's disability and any mine accident, including the 1959 and 1962 mine accidents, resulting in a denial, is supported by substantial evidence in the record.

■ On the question of causal link, the Fund's medical consultant reports that the bulk of the medical records refer to visits, hospitalizations and treatment of Huff's numerous medical problems, mentioned earlier, that few records relate specifically to complaints associated with his right leg injury and there are no records documenting the treatment of his injuries and follow up after the 1962 mine accident, that the five examinations contained in the record performed between 1984 and 1987 were rendered solely for Social Security disability determinations, and that generally the records reflect that Huff was found to be disabled due to conditions not etiologically related to his 1962 injury. In other words, according to the Fund's medical consultant, "Huff was disabled due to multiple medical impairments not related to his mine accident." See letter of Linda Fritz, Disability Pension Appeal, Jan. 17, 1990.

Similarly, Huff's 1959 injury, a chip fracture of his toe and contusion of his right foot, is not well documented in the record, and Huff failed to identify this accident or claim this injury as a disabling condition when he applied for his disability pension. There is no documentation of follow-up treatment either.[2] The only evidence in the record that even arguably connects any of Huff's mine accidents to any of his current medical conditions are the reports of Drs. Huntwork and Craythorne, both of whom were solicited by Huff's attorney to render an opinion as to whether Huff was disabled. These two medical opinions generated in 1987, anywhere from 25 to 28 years after Huff's 1959 and 1962 mine accidents and done at the request of Huff's attorney create a dispute in Huff's historical medical records as to his disability resulting from a mine accident. Apparently the Trustees placed great emphasis upon medical records generated as a result of Huff's seeking Social Security disability benefits, which reveal that "[Huff's] primary medical problems at this time are chronic lung disease (silicosis and pneumoconiosis), hypertension, chest pains, possible angina, osteoarthritis of the spine, hip, knees, diabetes mellitus, and obesity." See medical report of Dr. Modi at ¶ 4. On August 29, 1984, Dr. Piracha opined that "in view of [Huff's] multiple symptoms such as fatigue, tiredness, dizziness, that it is possible that on exertion he becomes severely hypertensive with a blood pressure of 260/100, and osteoarthritis and diabetes, that he will not be able to keep a job on a full time basis." See medical report of Dr. Piracha at p. 2. On August 16, 1985, Dr. Craft opined that "[Huff] is totally disabled secondary to diabetes, hypertension and arthritis." See medical report of Dr. Craft. In April/May of 1986, Drs. Walker and Jackson diagnosed Huff as having "coronary artery disease with angina" (see medical report of Dr. Walker, May 29, 1986) and "[h]as occasional numbness of the left lower leg posteriorly ... [n]o history of foot injury." See medical report of Dr. Jackson, May 21, 1986, at p. 2. These objective medical opinions coupled with the Administrative Law Judge's determination that Huff was disabled as of June 4, 1988, but not prior thereto, were obviously important in the Trustees' denial.

---

**2.** There is some evidence regarding a second 1959 injury, a laceration to Huff's left hand, yet Huff received no workers compensation award for this specific injury. Although one doctor apparently recommended 20 physical therapy treatments for this injury, there is no documentation that these or any other treatments were ever given for the injury, and Huff did not identify this accident or claim this injury as a disabling condition when he applied for disability pension.

■ Balancing all of this information contained in the file, including Huff's various awards from the West Virginia Workers Compensation Fund, it is the Trustees' duty to determine whether Huff's disability is the result of a mine accident. See Article II, Section C. The Trustees of an employee pension plan such as the UMWA 1974 Pension Plan have a fiduciary obligation under ERISA and under the common law of trust to administer the plan in accordance with the governing plan documents and to pay benefits only to eligible participants. 29 U.S.C. § 1104(a)(1)(D); see *UMWA Health and Retirement Funds v. Robinson,* 455 U.S. 562, 573–74, 102 S.Ct. 1226, 1232–33, 71 L.Ed.2d 419 (1982). "A trustee has the obligation to guard the assets of the trust from improper claims, as well as the obligation to pay legitimate claims." *LeFebre v. Westinghouse Electric,* 747 F.2d 197, 207 (4th Cir.1984). Review of trustees' decisions should be *de novo* unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. *Firestone Tire and Rubber Co., et al v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989). Under the abuse of discretion standard articulated in Firestone, this Circuit has held that the Trustees' challenged denial of benefits should not be disturbed if reasonable and supported by substantial evidence. *de Nobel v. Vitro Corp.,* 885 F.2d 1180, 1187–88 (4th Cir. 1989); see also *DeWitt v. State Farm Ins. Co. Retirement Plan,* 905 F.2d 798, 801 (4th Cir.1990).

The Court perceives no unreasonableness in the Trustees' decision denying Huff's claim for disability benefits. Substantial objective medical evidence in the record supports the denial and the conclusion that there was an insufficient causal link between Huff's multiple medical impairments, including his disability for Social Security purposes, and any of his previous mine accidents. Therefore, the Court concludes that the Trustees' finding that Huff was not totally disabled as a result of a mine accident was not an abuse of discretion.

As to Huff's claim for increased service credit pension benefits, Huff must establish that he had at least 20 years of credited, signatory service. Huff contends that he spent 33 years of classified employment in the coal industry between 1951 and 1983. Out of the years claimed, the only years in dispute, i.e., the years for which Huff was awarded less one full year of credited service, are 1951, 1954, 1955, 1963 and 1975.[3] As to Huff's claim for an award of four additional years of credited service under the Trustees' *Maggard*[4] policy, Huff does not expressly state which additional four years he is claiming, but it appears the claim is for years on or after 1981, since Huff points to his occupational pneumoconiosis award, dating from July of 1981, from the state workers compensation fund as the basis for his claim of credit under the *Maggard* policy.

■ To support his claim for credit in the years 1951 and 1954, Huff submitted a Social Security statement of earnings which shows that he earned $115.50 in 1951 and $16.67 in 1954. Under the 1974 Pension Plan, Huff would have had to earn $411.50 in 1951 and $415.25 in 1954 in order to establish ¼ year of credited service in those years. See Article IV, Section A(1).[5] Consequently, Huff is not entitled to increased service credit for 1951 and 1954.

■ For 1960, Huff received ¾ year of credited services. Huff's Social Security

---

3. The remaining years between 1961–1975, excluding 1963, are not years of eligibility for Huff under the 1974 Pension Plan, since he was employed in "non-coal" or "non-sig[natory]" jobs, i.e., jobs not protected by Union contract.

4. The *"Maggard* policy" is the result of a court approved settlement in the 1979 lawsuit of *Maggard v. Huge,* Civil Action No. 76–2219 (D.D.C. Mar. 14, 1979). The *Maggard* policy statement of the Trustees provides that "a miner is eligible for up to four additional years of credited service for a period of disability for a definite period of time due to a mine injury or mine related occupational disease." *Pratt v. Connors,* 857 F.2d 231, 232 n. 1 (4th Cir.1988).

5. Apparently Huff was employed in the automobile industry in Michigan during part of 1954.

wage records indicate that he earned $2,020.58 in coal industry employment in 1960. Island Creek's records indicate that Huff terminated that particular employment on April 4, 1960. To be awarded a full year of credited service in 1960, Huff would have had to earn $2,303.00. See Article IV, Section A(1). Thus, Huff is not entitled to a full year of credited service for the year 1960.

Huff claims that he is entitled to service credit for 1955, 1961, and 1964 through 1975, based on his alleged employment with Island Creek. Yet, Island Creek submitted documents which indicate that Huff was not employed by that company during those years. Island Creek's position is supported by Huff's Social Security wage record which shows that Huff had absolutely no earnings from coal industry employment during those particular years. In fact, the record indicates that Huff could not supply records to substantiate his claim, since he was employed by non-signatory employers or in non-coal related industries, including the automobile industry in Michigan, or otherwise employed in Colorado, Oklahoma and New York during the years in question. (See Footnote 3, *supra*). On this basis, the Trustees' decision is supported by substantial evidence as to these particular years claimed by Huff for additional credited service.

■ For his 1952 and 1959 mine accidents, Huff is not entitled to additional credit. Huff was only out for 13 days following the 1952 accident and four to six weeks following the 1959 accident. Previously, Huff had been awarded full credit for 1952 and 1959. The Plan prohibits the award of any additional credited service after having been previously awarded full credit. See Article IV, Sections A(3), C(2).

■ For 1962 and 1963, Huff received no credit based on "hours worked" because the record fails to substantiate hours worked or a sufficient amount of coal industry earnings for those years. However, Huff did receive a total of one year of credited service for ¼ year for 1962 and ¾ year for 1963, for his 1962 mine accident during his brief employment with Mark

Coal Company. That credited one year is the maximum amount allowed under the terms of the 1974 Pension Plan. See Article IV, Section A(3). Also, Huff is not entitled to increased service pension credit under the *Maggard* policy for his 1962 injury and subsequent period of unemployment since Huff had a workers compensation award for this injury, not to mention the maximum, one full year of credited service under Article IV(A)(3). See *Maggard* policy statement, ¶ 5.

Finally, Huff argues that he is entitled to an award of four additional years of credited service under the Trustees' *Maggard* policy for years on or after 1981. Huff cites to his occupational pneumoconiosis award dating from July of 1981 from the state workers compensation fund as a basis for his claim under *Maggard*.

■ First, as to the years from 1981 through 1984, an award of additional credited service is not awardable under the UMWA 1974 Pension Plan because Huff previously was granted a full-year of credited service for each year from 1981 through 1984. Pursuant to Article IV, Section C(2), "[a] Participant shall not be credited with more than one year of service for any calendar year by reason of any combination of the rules of this Article IV." UMWA 1974 Pension Plan, Article IV, Section C(2). For those years, Huff has been awarded all that he has been entitled to receive.

Second, to the extent Huff argues he should be given credit under the *Maggard* policy for any periods after 1984, the *Maggard* policy is inapplicable. *Maggard* represents a modification of the requirements of credited service under Articles IVA(3) and Article IVB(2) of the UMWA 1974 Pension Plan. The *Maggard* policy does nothing to change the fact that these two articles of the UMWA 1974 Pension Plan do not permit an award of service credit for any period after December 6, 1974. Article IV, Section A(3) states that "[i]n no event shall service be credited under this paragraph (3) with respect to periods after December 6, 1974." Article IV, Section B(2) contains similar express language, and

nothing in the *Maggard* policy changes this condition.

Furthermore Plaintiff's reliance on the *Maggard* policy as applied in *Pratt v. Connors*, 857 F.2d 231 (4th Cir.1988) is misplaced. Unlike *Pratt*, in the case at bar there is medical evidence of record aside from the three physicians who examined Huff 25 and 28 years following his 1959 and 1962 mine accidents at the request of Huff's attorney that objectively supports the Trustees' denial of enhanced service pension credit. The Trustees reviewed Huff's file, including additional workers compensation documents submitted in support of Huff's eligibility, Social Security disability examinations, and various other medical opinions contained within his file and thus contrary to *Pratt*, the medical evidence at the time of the Trustees' denial was disputed. There has been no "unilateral modification" diminishing Huff's rights. *Pratt*, 857 F.2d at 234. At any rate, Huff has received the maximum award allowable under the 1974 Pension Plan for each of the years in question. Therefore, the Court concludes that the Trustees decision is supported by substantial evidence and was not arbitrary, capricious or unreasonable.

Based on the foregoing analysis, the Court concludes that there is no genuine issue of material fact in dispute and that as a matter of law the Defendants are entitled to judgment. Accordingly, the Court GRANTS the Defendants' motion for summary judgment and DENIES the Plaintiff's motion for summary judgment.

The Clerk is directed to send a copy of this Memorandum Opinion and Order to counsel of record.